3-17-0258, People of the State of Illinois, Appalachia, by Mark Oswald v. Linda Shoevlin, Appalachia, by J.D. Freeman Good afternoon. You may please the court, counsel. I am Jay Wigman, an assistant fellow defendant with the Office of the State of Appalachia, counsel for defendant Linda Shoevlin, who asserts that the trial court erred when it granted the State of Appalachia the right to sue. The State's motions were a mistrial because, one, there was no manifest necessity to grant the motion requested by the State, and second, there were several other corrective measures that could have been taken to avoid the prospect of trying the defendant a second time. The instant trial was the result of a somewhat contentious separation by the defendant from her husband, who was a complainant in this cause. There was an evening after the defendant had moved out of the family home when she was allowed back into the home by the husband and allowed to spend an evening or two with the two children as well, because she wasn't able to stay in the place where she had been staying. After the children went to bed, the husband and wife talked both about the status of their relationship and about custody and visitation arrangements, and specifically, there was a discussion about the complainant's brother wanting the family to come visit him the next day when that was supposed to be the day for visitation by the defendant in this case. It apparently was an argument, and then the defendant left for work. The complainant in the case called the police, and they came to the house. Domestic battery charges were the result of that transaction. Throughout the trial, it was clear that defense counsel's argument was that this was about the divorce and that the husband was lying because he was trying to negotiate better terms for custody and child support and development of property through the divorce. At one stage, it was said that the complainant had a powerful motive for making up the charges against the defendant. There was no objection to that. There was a comment made in the opening arguments. I'm sorry, in the opening statements. The judge recognized at one point when he granted or sustained an objection. The judge commented to counsel, this does nothing to interfere with your ability to make the argument that, quote, everything he did was to affect the outcome of the divorce. Then we get to the closing arguments, and there had been relatively little difficulty by either side. There had been one objection registered by a defendant when the state asked in almost preliminary questioning of the defendant, you were interested in reconciliation because you're having an affair. Isn't that correct? The judge immediately sustained the objection and said that's an improper question. The jury is instructed to disregard it, and they moved on. In the closing arguments, unfortunately, these were not transcribed. And I don't know if it was a technical difficulty, but for whatever reason, there is no transcript that survived. There's a bystander's report, and that's what we have to rely upon. And in that bystander's report, the defense counsel is quoted, even though it's not a verbatim report, as saying that Mr. Shulman, in this case, knows that if she gets a conviction in this case, her kids are going to be taken away. That's why he's making all of this up and why the state can't bring this case beyond a reasonable doubt. It didn't happen. So we're asking you to find evidence that Shulman is not guilty. The defense counsel completed his closing argument. The state had already completed its closing argument. But before the state got to rebuttal, the judge sent the jury out of the room and spoke with counsel and said this was a highly prejudicial comment. It was improper. There was a brief discussion, and the state requested a misfire. The defense attorney was asked what it was that could be done. He said, I don't think that the comment was improper, but to the extent that it was, the jury will be instructed that what I say is the law, and therefore, the case is not to be decided on that basis. The judge took five minutes to think about it, came back, and said, I see only two options. I can simply instruct the jury to disregard the comment, but the judge didn't think that that would work. Contrary to law in other cases, the judge said, I think that the jury will simply think that the statement is true if I instruct them to disregard it, contrary to the instruction. The second option that the judge considered was that he could criticize the defense counsel and say that he didn't know what he was talking about, and so the jury wasn't supposed to listen to him. This presents a false dilemma because there were, in fact, other options, and those will be discussed in a few minutes, but the primary argument that we raise here is that the granting of the mistrial at that stage was improper, both because there was no manifest necessity for the mistrial, that in particular, the statement was not something that was improper, as judged by the court, considering the tenor of the overall argument, but that secondly, if this were considered to have been an improper comment, it was an isolated one, it was one of many arguments that were presented to the jury, and there were at least three other options that the court had available to it to avoid proceeding to a mistrial, which is considered a very drastic measure, given the importance of a defendant only needing to be tried one time. It is clear in the instant case that the defendant did not request a mistrial, and when the mistrial was discussed, defense counsel argued against it. Defense counsel is not required to formally, specifically object. It is enough that they resist, that they argue against something, and in particular, I rely upon Camden, which is not included within the briefs, but was included within the motion to dismiss filed by trial counsel. There are other cases as well that say in a situation like this, there often isn't an opportunity for defense counsel to object. If there is a rather quick decision, if the judge is heading in that direction, and as in this instance, apparently, after discussing a brief reset and granting the motion for mistrial, there was no opportunity for defense counsel to object. And none of the actions taken by counsel compared to the examples that are offered by the state in its brief, wherein there were certain things that trial counsel did, whether it was agreed to stipulate to a witness's testimony so that we would not have to come back for the next trial, or go about scheduling the next trial, waiving the speedy trial term was what happened in one of the instances cited by the state. There was no such action in this case to indicate that defense counsel was acquiescing to the motion for the trial. And in fact, it was approximately three weeks after the judge rendered his decision that defense counsel filed a motion to dismiss the charges on the grounds of federal government. Nor was this something that was caused by defense counsel's conduct. In most of the cases in which a manifest necessity is found, Moore states that the defendant's counsel's conduct is usually the reason for the mistrial. Whether it's unprofessional conduct in Dahlberg, it was the final straw that broke the camel's back in that case was a reference to a polygraph test. And while that's an extreme example, part of what Dahlberg stands for is the proposition that it takes more than just one instance. That was referred to as pushing the camel above the table. But that had been preceded by a number of improper questions and much improper activity on behalf of defense counsel. That wasn't present in this case. In fact, the judge commented at the hearing on the motion to dismiss that for the most part, counsel had behaved completely appropriately. There hadn't been any difficulties. And more importantly, the judge commented that he understood what it was counsel was saying. He didn't think that he said specifically that in a legal sense that the defendant would lose her children if she were convicted. Instead, the judge said, I understood the overall commentary. And the judge specifically stated that he understood that the comment went to the complainant's state of mind and his rationale and his motivation for lying. The state attempted to alter the vice manager's report and say that the comment had been stronger than the language in which it was reported. But the court said, no, I don't recall that. And I recall the entire tone of the argument was going to the complainant's state of mind. So this is not the type of error that was caused by a defense counsel who was being obstreperous and improper throughout the proceedings. Instead, it was apparently an isolated comment. And in other areas of the law as well, we commonly discuss that the goal is not a perfect trial, but a perfect one. There are going to be misstatements that are made. There are going to be actions that are incorrect. And here, the judge didn't think that they were intentional. The judge didn't think that he specifically said that he didn't think that counsel was trying to prejudice the jury. Instead, the court said this was a misstatement, but it was an important misstatement. And so I believe that he misconstrued it as justified. Assuming for the sake of argument that the comment were, in fact, considered to be improper. And unfortunately, part of the problem is we don't know what the exact comment was. If you took away the second word of the quote that I gave you and that's contained in the briefs. If instead of saying he knows, if you said he thinks, then he gets a conviction. Then it clearly goes to the state of mind it was simply a misstatement. And again, in the context of the overall statement, that's exactly what it appears to be. But assuming for the sake of argument that it's considered to have been intentional, if it's considered to have been an error. It was an isolated error. It did not fall within the overall tone of the argument. And I note that the state didn't object to it. When it occurred. So there are three options to my way of thinking that the court had available to it. The first is, and the law clearly suggests, that what the court should have done is it should have instructed the jury. One, that the comment was improper. They weren't to regard it. And then provide the instructions that are given as part of pattern instructions of the completion of every case. Had that been done, the jury would have been told two, three, or four times that what counsel said was not the law. That what the judge said was the law. And that the arguments of counsel are purely that. They're arguments. They're not a restatement of the law. The court, however, going against cases such as Morgan, in which racist comments were allowed in. And it turned out that the officer's statement regarding those statements had not been provided to the defense counsel. Or in Sosa, where the defendant was quoted by a witness as saying, I would have killed you, speaking to the police officer, if I had the chance. That statement also was not provided. It was clearly prejudicial. But the court found that instructions were sufficient. That the jury had been inculcated with its duties. And instructed and understood that it wasn't to consider statements that the court sustained objections to. In this case, there wasn't an objection. But had the court sua sponte instructed the jury, the jury would not have, as the judge expressed, believed that the statement must be true. If that's the rule, then there's no means by which an objection can be sustained under the law. And not be considered to somehow be prejudicial that the jury is going to go either way. Notably also, and I believe it was the U.S. Supreme Court in this report, stated that instruction that is given to the jury. Whether it's that specific instruction contemporaneous with the objection. Or the instruction by the court at that time. Or whether it's the instructions that come later to the court. It's one of them. And it loses its emphasis when it goes to the jury. And notably, this would not have been the last thing that the jury heard. If the court had, one, simply instructed the jury at that time. Or two, taken one of the other two measures that are suggested here. One, which is to allow defense counsel to clean it up. It is not uncommon for counsel to reopen an argument. Or for a discussion to be had at the bench and counsel to come back out. While it might have been a little bit more awkward here because the judge didn't immediately address the comment. Had the judge allowed defense counsel to go back and say, I want to clarify something. I don't want you to get the impression that I'm saying this is a matter of law. This is specifically what the argument is. The judge will instruct you as to what the law is. That is repeatedly in trials and is a completely proper way to allow defense counsel to try to remedy what he had done. Which had apparently been inadvertently judged by the trial court to not have been a purposeful offense against the court. Secondly, what the court could have done was simply leave it to the state to address an insert. And there is indication in concession by the state in its brief that that may well have been what the state intended to do. And the state may have wanted to do that simply to say that's not the law. There's no reason and no support for the judge's claim that counsel for the state couldn't have said that. That's not the law. She's not going to lose her kids. That's not what this case is about. Had the state had that opportunity, this matter could have been remedied. The state may also have wanted to do it simply because it would have benefited their argument. The argument cuts both ways. And if the argument is that she's going to lose her kids, the state would have argued that that was a good reason to not leave the defendant. And it would have been a good reason for the jury to believe that in fact the defendant had committed these actions. So it may well have been that the state purposely was waiting to address it in its closing argument. Certainly, had it had the opportunity to address the closing argument, counsel for the defense could have complained at that point because he had, in a fashion, invited the commentary that was coming. So because the comments were, in fact, not intentionally done, were not done for the purpose of prejudicing the jury, and because even if the comments are considered to be improper, there were at least three other means of avoiding this extreme measure, the defendant hereby requests that this court reverse the denial of militant abuse mischarges on grounds of double jeopardy and preclude the defendant's retrial in the second trial. Thank you, counsel. Counsel. Thank you. May it please the court. Counsel. The defendant argues that the trial judge erred when granting the guilty motion for mistrial and the denying defendant's motion to dismiss on double jeopardy grounds. The defendant argues that there's no manifest necessity for the trial judge to declare the mistrial based on the trial judge's, but from counsel's point in closing argument, the defendant would lose her children if convicted. The defendant had been charged, of course, with two counts of misdemeanor domestic battery for striking her estranged husband, Edward, on the head and also for scratching his neck and face. In trial cross-examination, the defense counsel asked Edward whether he and the defendant had decided custody of their children, and Edward said he had decided he was going to take custody. The defense counsel asked if this was his decision to make, and Edward replied, at the time of the DCF cases, yes. The defense counsel did not object to the scratchings to the DCF cases involving the defendant or move to strike. This answer was not responsive. The people later called Edward and rebut the defendant's testimony and rebut cross-examination. The defense counsel noted that Edward testified that the defendant first saw her children three months after the battery, and Edward replied that the defendant asked to see the children one week after the battery, but he had an order of protection prohibiting such contact. In a reply brief, the defendant claims Edward volunteered unresponsive answers to the defense counsel's questions. The defense counsel's questions opened the door to Edward to explain the DCF involvement as a reason for his taking custody of the children and to explain that he was the reason the defendant had not seen the children for several months. The defense counsel did not object to Edward's answers or move to have them stricken as nonresponsive, and the people did not ask about the DCF's involvement at all. The defendant did not now complain about testimony in response to counsel's question. The defendant did not ask a trial. So all that's in, right? The jury heard all that. Yes. So since they've already heard all that, how does this comment that lead to a manifest necessity for a mistrial? Because this is prejudicial in that it affects the entire fairness of the trial case. Counsel told the jury that if they found the defendant guilty, she was going to lose her children. And the state didn't object? Not immediately at that time, no. Not until the judge brought it up at a recess? Right. No, the judge brought it up, yes, at a recess. That's true. Sent it to the jury at that time. Now, we don't know. Again, this is the vice governor's report. We don't have a good record of what was said. There wasn't a minute or two of discussion. But we don't have a permission to account for what happened at that time. It's possible that the people did not want to go into it at all. They wanted to go past it and not emphasize that comment. Or maybe they were going to discuss it rebuttably and say this is not true. We don't know. Well, I guess here's my point. These aren't sixth graders on the jury. And they've heard all this evidence that there's a divorce going on. And the defense theory was she's making this up to put herself in a better position for whatever reason. Or he's making it up to her husband to put himself in a better position. There's evidence. There were evidence of the children, right? So you think jurors didn't know that child custody was part of that? Well, I can't know what the juries would have said. Some people don't have a clue about DCFS. We work in a system where we know a lot about it, unfortunately. Well, but they didn't understand certainly child custody, and especially the whole theory is he's making this up, the defense theory is, to prejudice me and the divorce case. Right. But then we throw out a comment that, you know, if you find a guilty stimulus, yes, that falls in line with this situation, you know, about the DCF cases and court of protections, you know, makes you look like a bad person in a jury's mind. If we have one parent on the panel who decides that could be true, then we could acquit based on that one comment. We don't know how to fix the jurors. At this point, people in this panel agree. We don't have any other arguments that we'd like to offer at this time, and we ask that you defer trial and judicial decisions. Thank you. Counsel. May it please the court, I don't have any particular further arguments to raise at this time, but if the court has any questions, I would be happy to have them. Just to confirm, there was no contemporary, in this statement that was made, there was no objection at that time by the state? No, and in fact, the bystander's report specifically states that no objection was made. And it comes right after that. Thank you, counsel. The court will take this matter under advisement and render a decision. Right now we'll take a break and have a panel discussion.